Order Filed on February 18, 2026
by Clerk
U.S. Bankruptcy Court
District of New Jersey

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In Re:<br><br>**NATIONAL REALTY INVESTMENT ADVISORS, LLC,**<br><br>                    Debtor. | Case No.:<br>Chapter:<br>Judge: | 22-14539<br>11<br>John K. Sherwood |
| **AIRN LIQUIDATION TRUST CO., LLC** in its capacity as Liquidation Trustee of the **AIRN LIQUIDATION TRUST,**<br><br>                    Plaintiff,<br>           v.<br>**VALLEY NATIONAL BANCORP, D/B/A VALLEY NATIONAL BANK,**<br>                    Defendant. | Adv. Pro. No.: | 25-01237 |

### DECISION RE: DEFENDANT'S MOTION TO DISMISS

The relief set forth on the following pages numbered two (2) through fourteen (14) is hereby **ORDERED.**

**DATED: February 18, 2026**

_____
Honorable John K. Sherwood
United States Bankruptcy Court

Page 2
Debtor: National Realty Investment Advisors, LLC
Case No.: 22-14539
Adv. Pro.: 25-01237
Caption: **DECISION RE: DEFENDANT'S MOTION TO DISMISS**

## INTRODUCTION

The defendant Valley National Bancorp, d/b/a Valley National Bank ("Valley") filed a Motion to Dismiss [ECF No. 8] the plaintiff AIRN Liquidation Trust Co., LLC's ("Plaintiff") Complaint. The Plaintiff seeks a judgment against Valley based on its alleged role in a real estate Ponzi scheme carried out through the debtors, National Realty Investment Advisors, LLC, and its affiliates ("NRIA").[1] [ECF No. 1]. Valley performed banking services for NRIA from July 2021 to December 2021, during which time NRIA opened eleven (11) business accounts. [ECF No. 1, ¶¶ 2, 56]. Valley's Motion is based on two primary arguments: (i) that the Plaintiff lacks standing to assert tort claims on behalf of NRIA's creditors under New Jersey law and (ii) that the Plaintiff's aiding and abetting claims should be dismissed for failing to adequately allege that Valley had actual knowledge of the Ponzi scheme or substantially assisted the Ponzi scheme. It also argues that the rest of the Plaintiff's less significant claims should be dismissed on other grounds. [ECF No. 8-2, p. 9 of 37]. The Court has recently decided a similar motion to dismiss by a bank that was sued by the Plaintiff based on its dealings with NRIA and its principals. *AIRN Liquidation Trust Co., LLC v. Bank of America, N.A.*, Case No. 22-14539, Adv. Pro. No. 25-01239 (Dec. 31, 2025), ECF No. 22 ("BofA Decision" or "BofA Case"). The Court will incorporate much of the legal analysis in that decision.

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b), 157(a), and the Standing Order of Reference from the United States District Court for the District of New

---

[1] Capitalized terms not otherwise defined herein have the same definitions as set forth in the Complaint.

Page 3

| | |
|---|---|
| Debtor: | National Realty Investment Advisors, LLC |
| Case No.: | 22-14539 |
| Adv. Pro.: | 25-01237 |
| Caption: | **DECISION RE: DEFENDANT'S MOTION TO DISMISS** |

Jersey. The Plaintiff alleges that this is a core proceeding citing to 28 U.S.C. § 157(b)(2). Valley argues that this is a non-core proceeding and does not consent to the entry of final orders or judgment by the Bankruptcy Court. Fed. R. Bankr. P. 7008. To the extent this proceeding (or any part thereof) is ultimately determined to be non-core, this Decision would constitute the Court's proposed findings of fact and conclusions of law under 28 U.S.C. § 157(c)(1).

## **FACTS AND PROCEDURAL HISTORY**

The Complaint alleges that Thomas Nicholas Salzano a/k/a Nick Salzano, Rey E. Grabato II, and other co-conspirators operated NRIA, a purported real estate development firm and fund manager, as a Ponzi scheme that lured Investors by promising high rates of returns. Throughout the course of the scheme, NRIA raised approximately $664 million from almost 2,000 Investors. [ECF No. 1, ¶ 1]. In March 2021, Salzano was arrested for giving an Investor a forged term sheet. After his arrest, NRIA terminated Salzano and retained the Casey Group, Ltd. ("Casey Group"). [ECF No. 1, ¶¶ 5, 52]. The Casey Group was appointed as manager effective November 1, 2021, and was responsible for ensuring NRIA used the Fund's assets appropriately. [Case No. 22-14539, ECF No. 16, p. 5 of 22].

NRIA filed for Chapter 11 relief on June 7, 2022. The Court confirmed its Amended Chapter 11 Plan on August 10, 2023, which provided for the formation of the Liquidating Trust as successor to NRIA's bankruptcy estate to liquidate real estate assets and pursue litigation. The litigation claims belonging to the Trust include claims contributed by NRIA's Investors. [Case No. 22-14539, ECF No. 3599].

In 2002, Grabato opened personal bank accounts at Valley. [ECF No. 1, ¶ 23]. NRIA's relationship with Valley did not begin until July 2021, which was four months after Salzano's

Page 4

| | |
|---|---|
| Debtor: | National Realty Investment Advisors, LLC |
| Case No.: | 22-14539 |
| Adv. Pro.: | 25-01237 |
| Caption: | **DECISION RE: DEFENDANT'S MOTION TO DISMISS** |

arrest. [ECF No. 1, ¶¶ 5-6, 28]. NRIA opened its Valley accounts after other banks terminated NRIA as a customer. Between July 2021 and December 2021, approximately $40 million of new, direct Investors' funds and $27 million of funds transferred from other institutions were deposited into Valley accounts. In total, approximately $265 million flowed through eleven (11) Valley accounts during this five-month-long banking relationship. [ECF No. 1, ¶¶ 28-32]. For the last two of the five months, NRIA was managed by the Casey Group. The Plaintiff does not suggest that the Casey Group had any role in NRIA's fraudulent schemes.

The allegations in this Complaint are very similar to the allegations in the Plaintiff's Complaint in the BofA Case.[2] The Complaint against Valley contains twelve (12) counts summarized below.

- Count One – Aiding and Abetting Fraud – Valley provided substantial assistance by "effectuating millions of dollars in transfers through the Debtors' accounts" and Valley knew the NRIA accounts were being operated in a way consistent with a Ponzi scheme.
- Count Two – Aiding and Abetting Securities Fraud under New Jersey Law – As an agent of NRIA, Valley materially participated in the fraudulent sale of securities to the Investors.
- Count Three – Aiding, Abetting, or Participation in Breach of Fiduciary Duty – As an investment advisor, NRIA owed a fiduciary duty to its Investors. Valley knew that NRIA had a fiduciary duty yet knowingly allowed the NRIA accounts at Valley to be used to conduct fraudulent activity in violation of NRIA's fiduciary duty.
- Count Four – Actual Fraudulent Transfers under 11 U.S.C. §§ 548 (a)(1)(A) and 544 – Valley received banking and management fees from NRIA in the amount of at least $5,000 in the two years preceding the bankruptcy. These transfers were made with actual intent to hinder, delay, or defraud creditors because they were made in furtherance of the Ponzi scheme.
- Count Five – Constructive Fraudulent Transfers under 11 U.S.C. §§ 548(a)(1)(B) and 544(b) – Valley received banking and management fees from NRIA in the amount of at least $5,000 in the two years preceding the bankruptcy. NRIA did not receive

---

[2] The only difference is that a preference claim has not been brought against Valley.

Case 25-01237-JKS    Doc 17    Filed 02/18/26    Entered 02/18/26 11:04:19    Desc Main
Document    Page 5 of 14

Page 5
Debtor:        National Realty Investment Advisors, LLC
Case No.:      22-14539
Adv. Pro.:     25-01237
Caption:       **DECISION RE: DEFENDANT'S MOTION TO DISMISS**

- reasonably equivalent value from these transfers and was insolvent or became insolvent as a result, engaged or was about to engage in a business or transaction for which any remaining property was an unreasonably small capital, and/or intended or believed it would incur debts beyond its ability to pay.
- <u>Count Six – Actual Fraudulent Transfers under New Jersey Law</u> – Valley received banking and management fees from NRIA in the amount of at least $5,000 in the two years preceding the bankruptcy. These were fraudulent transfers by NRIA, and Valley did not receive them in good faith.
- <u>Count Seven – Constructive Fraudulent Transfers under New Jersey Law</u> – Valley received banking and management fees from NRIA in the amount of at least $5,000 in the two years preceding the bankruptcy. NRIA did not receive reasonably equivalent value from these transfers and was insolvent or became insolvent as a result, engaged or was about to engage in a business or transaction for which any remaining property was an unreasonably small capital, and/or intended or believed it would incur debts beyond its ability to pay.
- <u>Count Eight – Recovery of Avoided Transfers under 11 U.S.C. § 550</u> – The transfers described in Counts Four through Seven are avoidable and recoverable by the Plaintiff.
- <u>Count Nine – Preservation of Avoided Transfers under 11 U.S.C. § 551</u> – The transfers described in Counts Four through Seven are avoidable and should be preserved for the benefit of the bankruptcy estate.
- <u>Count Ten – Aiding, Abetting, or Participation in Conversion</u> – NRIA Investors owned, possessed, or had the right to immediate possession of property in accounts at Valley but NRIA and its agents wrongfully misappropriated these assets. Valley knowingly or recklessly aided, abetted or participated in the misappropriation and conversion of Investor property.
- <u>Count Eleven – Unjust Enrichment</u> – Valley received sums for its services and the retention of these sums would be unjust.
- <u>Count Twelve – Disallowance and Equitable Subordination of Any and All Claims</u> – To the extent Valley files a proof of claim, this claim should be disallowed or equitably subordinated.

[ECF No. 1].

In its Motion to Dismiss, Valley makes the same primary arguments as the bank in the BofA Case: (i) the Plaintiff lacks standing and (ii) the Plaintiff fails to sufficiently plead the aiding and abetting claims. [ECF No. 8-2].

Page 6
Debtor:       National Realty Investment Advisors, LLC
Case No.:     22-14539
Adv. Pro.:    25-01237
Caption:      **DECISION RE: DEFENDANT'S MOTION TO DISMISS**

## ANALYSIS

**I.    The Plaintiff's Standing to Bring Tort Claims Against Valley.**

Valley argues that the Plaintiff does not have standing to pursue tort claims against it. The Court found that the Plaintiff has standing in the BofA Decision, and it has standing here for the same reasons. First, the Plaintiff has standing to pursue tort claims on behalf of NRIA because the Plaintiff was established to pursue or liquidate the Liquidation Trust Assets and make distributions to Liquidation Trust Beneficiaries pursuant to the terms of the Liquidation Trust Agreement.[3] [BofA Decision, p. 8]. Second, New Jersey's anti-assignment law is preempted by § 1123 of the Bankruptcy Code and the assignment of the NRIA Investors' individual claims to the Liquidation Trust was an appropriate means of plan implementation under § 1123(a)(5). [BofA Decision, pp. 9-11]. Third, the terms of the confirmed Plan per the Confirmation Order preempt state law and there are no compelling reasons to reconsider that decision. [BofA Decision, pp. 11-13]. Therefore, the Plaintiff has standing to bring tort claims against Valley on behalf of NRIA and the Investors.

**II.   Aiding and Abetting Fraud.**

To establish aiding and abetting fraud in New Jersey, the Plaintiff must prove that (1) NRIA committed fraud which caused an injury at the time of the defendant's assistance; (2) the defendant was aware its role was "part of an overall illegal or tortious activity" when it provided the assistance; and (3) the defendant knowingly and substantially assisted in the fraud. This Court discussed the requirements of pleading aiding and abetting fraud in the BofA Decision. [BofA Decision, pp. 13-18].

---

[3] Also, as found in the BofA Decision, Valley's *in pari delicto* defense is premature.

Page 7
Debtor:     National Realty Investment Advisors, LLC
Case No.:   22-14539
Adv. Pro.:  25-01237
Caption:    **DECISION RE: DEFENDANT'S MOTION TO DISMISS**

---

The Complaint easily satisfies the first element of the aiding and abetting analysis because it describes NRIA's fraudulent conduct with detailed facts. [ECF No. 1, ¶¶ 33-72]. As to the knowledge requirement, the Plaintiff's allegations include:

- Valley solicited Salzano hoping that he would open business accounts at Valley. [ECF No. 1, ¶ 110].
- In March 2021, Salzano was publicly arrested by the FBI and Valley still allowed NRIA to open business accounts starting in July 2021. [ECF No. 1, ¶¶ 67, 111].
- Valley received repeated warnings and red flags regarding the Grabato and NRIA accounts and permitted system overrides to allow NRIA to continue using these accounts. [ECF No. 1, ¶¶ 86-92, 138-41].
- Valley ignored incomplete and false information provided by NRIA when opening NRIA's accounts. [ECF No. 1, ¶¶ 81-85].
- Valley knew about the investigations into NRIA's fraud because these investigations were disclosed in NRIA's private placement memoranda dated June 14, 2021, July 1, 2021, September 1, 2021, and November 23, 2021. [ECF No. 1, ¶¶ 103-06].
- Valley had actual knowledge that two other banks closed NRIA accounts. When NRIA transferred money from its closed accounts at other banks to Valley, the transfers specifically referenced the account closures. [ECF No. 1, ¶ 114].

Allegations that Valley did not follow proper procedures, conduct due diligence, and investigate red flags might support a claim that Valley should have been aware of the fraud occurring at NRIA. However, standing alone, they are insufficient to support the allegation that Valley had actual knowledge of the alleged fraud.

But, the Complaint also alleges that suspicious activities took place in Grabato's personal Valley account and NRIA's Valley accounts which suggests that Valley may have had some knowledge of NRIA's fraud. In January 2020, before NRIA began banking with Valley, Valley requested that Grabato provide information and documentation to explain the "significant" amount of funds being deposited in his personal accounts. While Grabato was making over $380,000 in

Page 8
Debtor:     National Realty Investment Advisors, LLC
Case No.:   22-14539
Adv. Pro.:  25-01237
Caption:    **DECISION RE: DEFENDANT'S MOTION TO DISMISS**

---

deposits, he only substantiated $220,000 as his annual salary at NRIA. [ECF No. 1, ¶ 88-91]. This allegation allows the Court to infer that Valley was paying close attention to Grabato's personal account and that Valley had knowledge of what Grabato's NRIA salary should have been. Also, the Complaint alleges instances of suspicious deposits in the NRIA accounts at Valley. NRIA principals advised Valley that its accounts ending in x7560 and x7579 would receive approximately $200,000 in deposits each month, but in their first months, x7560 received $24 million and x7579 received $4.5 million. [ECF No. 1, ¶¶ 117-18].

Moreover, the Complaint alleges suspicious activity between Grabato's personal account and the NRIA accounts at Valley. The Complaint alleges that Grabato used funds transferred by NRIA in a manner consistent with a "clearing house" for NRIA and its insiders. [ECF No. 1, ¶ 125]. NRIA deposited $420,000 into Grabato's personal Valley account ending in x7667 on June 30, 2021, which was after Salzano was arrested. Then, on July 1, 2021, Grabato wrote a check for $420,000 to Salzano that was deposited into an account in Salzano's ex-wife Olena Budinska's name. [ECF No. 1, ¶ 126].

Other compelling allegations concern events in October 2021 when the Vice President/Market Manager of Valley met with NRIA's principals to inform them that Valley was closing all NRIA accounts. This allows the Court to infer that Valley was scrutinizing the account activity and found something wrong. Even so, Valley allowed the accounts to remain open into December 2021 upon request by NRIA's principals. After Valley noticed these accounts for closure, but kept them open upon NRIA's request, Valley allowed $24.3 million of Investor funds to flow through the bank. [ECF No. 1, ¶¶ 155-63].

Page 9

| | |
|---|---|
| Debtor: | National Realty Investment Advisors, LLC |
| Case No.: | 22-14539 |
| Adv. Pro.: | 25-01237 |
| Caption: | **DECISION RE: DEFENDANT'S MOTION TO DISMISS** |

More suspicious activity occurred between Grabato's personal account and the NRIA accounts at Valley, including consequential activity that occurred *after* Valley noticed the accounts for closure on October 28, 2021, but kept them open. Lines 97 through 108 of Exhibit A to the Complaint show a slew of extraordinary transactions totaling several hundreds of thousands of dollars from NRIA to Grabato and from Grabato to insiders and family members. [ECF No. 1-1, p. 3 of 4]. NRIA transferred $868,488 from its Valley account ending in x7781 to Grabato's personal Valley account ending in x7667 between October 4, 2021 and December 3, 2021. [ECF No. 1, ¶ 124]. As stated above, Grabato had previously reported to Valley that his NRIA salary was $220,000, which is substantially less than the transfer. [ECF No. 1, ¶ 124]. Also, Grabato wrote four checks from his personal account at Valley ending in x7667 to Salzano's ex-wife Jamie Samul from August 2021 to November 2021 totaling $60,000. The transfer from the fourth check was made on November 2, 2021. [ECF No. 1-1, p. 3 of 4]. On October 18, 2021, $600,000 was moved from NRIA's Valley account ending in x7781 to Grabato's personal Valley account ending in x7667. [ECF No. 1-1, p. 3 of 4, Transfer #93]. Prior to this transfer, Grabato's personal account had a balance of $41,000. [ECF No. 1, ¶ 128]. Grabato then wrote four checks to himself totaling $350,000 on November 1 and November 2, 2021. [ECF No. 1-1, p. 3 of 4]. Then, on November 9, 2021, Grabato wrote a check for $20,000 to his ex-wife Georginette Cleofe. [ECF No. 1-1, p. 3 of 4]. Once again, Grabato's account activity resembles that of a "clearing house" for NRIA and its insiders. [ECF No. 1, ¶¶ 123-29].

The above allegations by the Plaintiff support a reasonable inference that Valley may have had knowledge of NRIA's fraud. The Plaintiff will have to prove that Valley learned that NRIA was engaged in fraudulent activities and decided to overlook them because of the benefits derived

| | |
|---|---|
| Page 10 | |
| Debtor: | National Realty Investment Advisors, LLC |
| Case No.: | 22-14539 |
| Adv. Pro.: | 25-01237 |
| Caption: | **DECISION RE: DEFENDANT'S MOTION TO DISMISS** |

from NRIA's business. The allegations of the Complaint are sufficient to give the Plaintiff the opportunity to do so.

Next, the Court must consider whether the pleadings provide enough information for the Court to infer substantial assistance of the fraud. [BofA Decision, pp. 17-18]. The Plaintiff alleged that Valley substantially assisted in the fraud committed by NRIA as follows:

- Insiders collected Investor funds using NRIA's accounts with Valley. [ECF No. 1, ¶ 37].
- NRIA made significant Investor distributions using the Valley accounts. [ECF No. 1, ¶¶ 132-35].
- Valley employed the "Check Positive Pay" system to monitor payments and flag suspicious transactions as a means of preventing fraud. NRIA received "Positive Pay System Notifications" daily describing account exceptions granted by Valley. These "exceptions" were system overrides that allowed NRIA to continue to transfer funds and/or make payments that would have been prevented otherwise. [ECF No. 1, ¶¶ 138-41].

Valley argues in its Motion that it only provided "standard banking services." [ECF No. 8-2, p. 26 of 37]. However, Valley arguably engaged in services that were beyond standard when it granted the account exceptions described above and kept NRIA accounts open after flagging them for closure. [BofA Decision, pp. 17-18]. For these reasons, the Plaintiff adequately pled that Valley aided and abetted NRIA's fraud and Count One will not be dismissed.

### III.   Aiding and Abetting Breach of Fiduciary Duty.

A claim for aiding and abetting breach of fiduciary duty is similar to a claim of aiding and abetting fraud but also requires "that the party knew that the other's conduct constituted a breach of fiduciary duty and gave substantial assistance or encouragement to the other in committing that

| | |
|---|---|
| Page 11 | |
| Debtor: | National Realty Investment Advisors, LLC |
| Case No.: | 22-14539 |
| Adv. Pro.: | 25-01237 |
| Caption: | **DECISION RE: DEFENDANT'S MOTION TO DISMISS** |

breach." *Bd. Of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 174 (3d Cir. 2002) (citations omitted).

As in the BofA Decision, the first prong of aiding and abetting is satisfied because the underlying breach of fiduciary duty arose from NRIA's Ponzi scheme. [ECF No. 1, ¶¶ 204-07]. The question is whether the Plaintiff sufficiently pled that Valley had knowledge that NRIA was breaching its fiduciary duty to Investors. As set forth in the previous section, the Plaintiff alleges that there were instances during the banking relationship where Valley gave NRIA's accounts special scrutiny. Additionally, the Plaintiff pled that Valley may have been aware of NRIA's breach of fiduciary duty through the daily Positive Pay System Notifications, review of accounts that were flagged for closure, and account activity between NRIA's account and Grabato's account demonstrating extraordinary transfers both before and after the NRIA account was flagged for closure. [ECF No. 1, ¶¶ 123-29, 138-41]. With this information, it is reasonable to infer that Valley learned that NRIA was moving funds between accounts at the bank in violation of its duties to Investors.

The Plaintiff also pled that Valley substantially assisted or encouraged NRIA's breach of fiduciary duty. The allegations regarding Valley's substantial assistance of NRIA's fraud, as described above, also demonstrate Valley's substantial assistance of NRIA's breach of fiduciary duty. Therefore, the Plaintiff sufficiently pled aiding and abetting breach of fiduciary duty. Count Three will not be dismissed.

Case 25-01237-JKS    Doc 17    Filed 02/18/26    Entered 02/18/26 11:04:19    Desc Main
Document    Page 12 of 14

Page 12
Debtor:        National Realty Investment Advisors, LLC
Case No.:      22-14539
Adv. Pro.:     25-01237
Caption:       **DECISION RE: DEFENDANT'S MOTION TO DISMISS**

**IV.    Aiding and Abetting Securities Fraud.**

Like in the BofA Case and other related NRIA adversary proceedings, the Complaint did not make any allegations that Valley represented NRIA directly in the sale of securities.[4] The Plaintiff did not adequately plead that Valley aided and abetted securities fraud and Count Two of the Complaint will be dismissed.

**V.    Avoidance/Remaining Claims.**

**a.    Actual Fraudulent Transfers (Counts Four and Six).**

The Complaint seeks recovery of actual fraudulent transfers to Valley under § 548(a)(1)(A) of the Bankruptcy Code (Count Four) and under New Jersey law (Count Six). Here, the Plaintiff alleges that the fraudulent transfers from NRIA to Valley include banking and management fees in the two years preceding the bankruptcy in the amount of approximately $5,000. [ECF No. 1, ¶¶ 216-17]. The Plaintiff states that these transfers of fees to Valley were made in furtherance of the Ponzi scheme. [ECF No. 1, ¶ 220]. As set forth in the BofA Decision, the Ponzi scheme presumption applies because the Plaintiff alleges that NRIA was conducting a Ponzi scheme and that the fees paid to Valley were in furtherance of the Ponzi scheme. The actual fraudulent transfer claims in Counts Four and Six will not be dismissed.

**b.    Constructive Fraudulent Transfers (Counts Five and Seven).**

The Plaintiff also brings claims for constructive fraudulent transfers under the Bankruptcy Code (Count Five) and New Jersey law (Count Seven). Section 548(a)(1)(B) of the Bankruptcy Code provides that transfers may be avoided if the Debtors received less than reasonably

---

[4] The other related adversary cases are *AIRN Liquidation Trust Co., LLC v. Media Effective, LLC*, (Adv. Pro. No. 23-01335) and *AIRN Liquidation Trust Co., LLC v. Wipfli LLP*, (Adv. Pro. No. 24-01456).

Page 13
Debtor:     National Realty Investment Advisors, LLC
Case No.:   22-14539
Adv. Pro.:  25-01237
Caption:    **DECISION RE: DEFENDANT'S MOTION TO DISMISS**

---

equivalent value in return for the transfer while the Debtors were insolvent. *See also* N.J.S.A. § 25:2-25(a)(2) and 25:2-27(a). The Complaint seeks to recover "all banking and management fees paid to Valley" and refers to the fees in the two years preceding the bankruptcy in the amount of approximately $5,000. [ECF No. 1, ¶¶ 225-26, 243-44]. There is no allegation that these fees were unreasonable, or more than fees charged by other banks. Therefore, the Plaintiff's claims for constructive fraudulent transfers in Counts Five and Seven are dismissed.

    c. **Recovery and Preservation of Avoided Transfers (Counts Eight and Nine).**

The Plaintiff seeks to recover and preserve the allegedly avoidable transfers under 11 U.S.C. §§ 550 and 551, and/or applicable state law for the transfers in Counts Four through Seven. The Court has dismissed Counts Five and Seven but Counts Four and Six have not been dismissed. The claims for recovery and preservation of the avoided transfers in Counts Four and Six will not be dismissed.

    d. **Aiding, Abetting, or Participation in Conversion (Count Ten).**

In the BofA Decision, the Court found that Plaintiff adequately alleged facts demonstrating that NRIA committed conversion of Investor funds. Particularly, the Court determined in the BofA Decision that the Plaintiff demonstrated that the bank advised Dustin Salzano to add a DBA name to the account for a specific property, which drew the bank's attention to the alleged fact that this account was being used to make payments for purposes other than that property. This is a specific allegation that showed that BofA may have aided and abetted conversion of Investor property. [BofA Decision, pp. 24-25].

But unlike in the BofA Decision, the Plaintiff here did not adequately allege facts demonstrating Valley had knowledge that NRIA engaged in the conversion of Investor funds or

Case 25-01237-JKS    Doc 17    Filed 02/18/26    Entered 02/18/26 11:04:19    Desc Main
Document    Page 14 of 14

Page 14
Debtor:      National Realty Investment Advisors, LLC
Case No.:    22-14539
Adv. Pro.:   25-01237
Caption:     **DECISION RE: DEFENDANT'S MOTION TO DISMISS**

provide substantial assistance. While there may be a similar conversion claim here, it is not specifically laid out by the Plaintiff in Count Ten. The Plaintiff's claim for aiding and abetting conversion in Count Ten is dismissed but the Plaintiff's right to amend is preserved.

### e. Unjust Enrichment (Count Eleven).

In Count Eleven of the Complaint, the Plaintiff alleges that Valley was unjustly enriched. As found in the BofA Decision, the Plaintiff suggests that Valley's retention of banking fees in exchange for providing banking services was unjust. This claim is like the constructive fraudulent conveyance claims above that are being dismissed. Also, Valley's retention of the fees paid by NRIA would only be "unjust" if the Plaintiff prevails on one of its aiding and abetting tort claims, and New Jersey does not recognize unjust enrichment as an independent tort cause of action. *Jurista v. Amerinox Processing Inc.*, 492 B.R. 707, 754 (D.N.J. 2013) (citation omitted). Count Eleven is dismissed.

### f. Disallowance and Equitable Subordination of Claims (Count Twelve).

As in the BofA Case, Valley has not filed a claim in the NRIA bankruptcy that can be disallowed or equitably subordinated. Therefore, Count Twelve is dismissed without prejudice. If Valley somehow has a claim to assert later in this case, the Plaintiff's right to object is preserved.

### CONCLUSION

Valley's Motion to Dismiss the Plaintiff's Complaint is granted as to Counts Two, Five, Seven, Ten, Eleven, and Twelve, and is denied as to all other Counts. The Plaintiff's right to seek leave to amend the Complaint under Federal Rule of Civil Procedure 15(a)(2) is fully preserved.